IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| **LARRY WAYNE WOOTEN**, | § | |
| Petitioner, | § | |
| vs. | § | No. 6:02cv216 |
| | § | |
| **NATHANIEL QUARTERMAN**, Director, | | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | | |
| | § | |
| Respondent. | | |

**MEMORANDUM OPINION**

    Larry Wayne Wooten, an inmate confined to the Texas Department of Criminal Justice, Institutional Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Wooten challenged his capital murder conviction and death sentence imposed by the 6th Judicial District Court of Lamar County, Texas, in cause No. 16820, styled *The State of Texas vs. Larry Wayne Wooten*. Having considered the circumstances alleged and authorities cited by the parties, and having reviewed the record, the Court finds that the application is not well-taken and it will be denied.

    **Facts**

    On September 3, 1996, Troy Alexander discovered the bodies of his elderly parents, Grady and Bessie Alexander, in their house in Paris, Texas. Both victims had been beaten and stabbed. When the couple was alive, several family members had helped take care of them, including their niece, Ruby Black. Wooten, who had at one time been married to Ruby Black, had done odd jobs

for the Alexanders. Wooten told police that he had been at home, sick, during the time of the killings, but his alibi was contradicted by his girlfriend, Crystal Hayes, and by his roommate, John McCoin. Furthermore, Wooten's blood was found at the crime scene, and a pair of his pants with Grady Alexander's blood were found near an area where he (Wooten) had bought drugs around the time of the murders. Sharmane Washington testified that while she was doing cocaine with Wooten, he wore blue striped overalls, which had bloodstains on them. Family members testified that Grady Alexander wore blue striped overalls, and that his were missing from his belongings.

**Procedural history**

On July 29, 1997, Wooten was indicted for capital murder, for killing more than one person during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a) (Vernon 1994). On May 12, 1998, after a jury trial, he was found guilty and sentenced to death. On January 9, 2002, in an unpublished order, his conviction and sentence were affirmed by the Texas Court of Criminal Appeals. *Wooten v. State*, No. 73, 134. On October 7, 2002, his petition to the Supreme Court of the United States for a writ of *certiorari* was denied. *Wooten v. Texas,* 537 U.S. 829 (2002).

Wooten filed a petition for post-conviction relief, which was denied on April 3, 2002, in an unpublished order, by the Texas Court of Criminal Appeals. *Ex parte Wooten*, No. 47,160-01. On October 2, 2003, he filed a second petition for post-conviction relief. On January 14, 2004, the Texas Court of Criminal Appeals dismissed all of Wooten's claims in his second petition except his claim that he could not be executed because he was mentally retarded and remanded that claim to the trial court. *Ex parte Wooten*, No. 47,160-02. After the trial court found that Wooten was not mentally retarded, the Texas Court of Criminal appeals, in an unpublished order, adopted the trial court's findings and conclusions and denied Wooten's claim. *Id.* Wooten then applied for a writ of *habeas*

*corpus* from this Court.

**Claims**

Wooten's application contained fifteen claims:

1. He was denied the due process of law by the state's failure to provide discovery of the scientific evidence against him in a timely manner.

2. He was denied the effective assistance of counsel by the state's failure to provide discovery of the scientific evidence against him in a timely manner.

3. His counsel rendered ineffective assistance by not offering the testimony of his step-sister at the punishment determination phase of the trial.

4. His rights under the Eighth Amendment were violated when the trial court told the venire panel that everything that goes on in the courtroom is reviewed by another court.

5. He was incompetent to stand trial.

6. His counsel rendered ineffective assistance by not investigating his background in preparing for the punishment-determination phase of his trial.

7. He was deprived of his right to a trial by jury by the trial court's failing to instruct the jury that the state must prove beyond a reasonable doubt that the mitigation special issue should be answered in the negative.

8. He was denied the due process of law and his execution constitutes cruel and unusual punishment because the state offered false testimony at the punishment-determination phase of his trial.

9. He is actually innocent of the death penalty.

10. His trial counsel rendered ineffective assistance by not challenging venireperson Green for cause.

11. He was denied the due process of law and his execution constitutes cruel and unusual punishment because the Texas death penalty scheme does not allow jurors to be informed of the consequences of a single anti-death vote.

12. He was denied the due process of law and his execution constitutes cruel and unusual punishment because at the punishment determination phase of his trial the state was not required to prove beyond a reasonable doubt that he had committed other offenses.

13. He was denied the due process of law and his execution constitutes cruel and unusual punishment because at the time of his trial the Texas death penalty scheme did not provide for life without the possibility of parole.

14. He was denied the due process of law because the jury instructions in the punishment determination phase of his trial did not define the words "probability" and "criminal acts of violence."

15. Because he is mentally retarded, executing him would constitute cruel and unusual punishment.

**Standard of review**

Title 28 U.S.C. § 2254 (d) provides that relief in *habeas corpus* may not be granted with respect to any claim which was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was either (1) contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. A state court determination which is objectively unreasonable meets the requirements of 28 U.S.C. § 2254 (d)(1). *Woodward v. Visciotti,* 537 U.S. 19, 27 (2002). Pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254 (d)(1), while pure questions of fact are reviewed under 28 U.S.C. § 2254 (d)(2). *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001). Factual findings made by the state court are accepted unless rebutted by clear and convincing evidence. 28 U.S.C. §2254 (e)(1).

28 U.S.C. § 2254 (b) generally prohibits granting relief on claims not previously presented to the state courts. If a federal application contains any such claims, the federal court will attempt

to allow the applicant to return to state court and present them to the state court in a successive petition, either by dismissing the entire petition without prejudice, *see Rose v. Lundy*, 455 U.S. 509, 522 (1982), or by staying the federal proceedings, s*ee Rhines v. Weber*, 544 U.S. 269, 275-77 (2005).

If the federal court is convinced that the state court would refuse to consider the merits of such a successive petition, however, the federal court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The federal court generally does not review procedurally defaulted claims unless the applicant can establish either that he had good cause for failing to fairly present his claims, and he would be prejudiced by not being given an opportunity to do so in the federal court, or that the federal court's failing to address the claims would result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991). If it is not entirely clear that the state court would refuse to hear a successive petition containing the new claims, however, the federal court will allow the state court the first opportunity to consider them. *See Wilder v. Cockrell,* 274 F.3d 255, 262-63 (5th Cir. 2001).

**Analysis of claims**

Wooten's first claim is that he was denied the due process of law by the state's failure to provide discovery of the scientific evidence against him in a timely manner. Specifically, he alleges that although the trial court directed the prosecution in February of 1998 to turn over all of the DNA evidence in its possession, the prosecution first turned over less convincing DNA evidence, but then, after the trial had commenced in April of 1998, turned over more damning DNA evidence. Wooten contends that as a result of this piecemeal disclosure of evidence, he (1) rejected an offer to plead guilty in exchange for a life sentence, an offer he would have accepted had he known the true

strength of the evidence against him, and (2) based his defense at trial on attacking the initial DNA evidence.

Wooten did not present his plea bargain claim to the state courts. He contends, however, that the basis for the claim is information which came to light only after state proceedings had concluded, and he also contends that the claim is subsumed within his general due process claim. *See* Petition for Writ of Habeas Corpus at 11-12. The Court will resolve the plea offer claim on its merits.

In accepting a plea offer, a defendant gives up several constitutional rights. As a result, a decision to plead either guilty or no contest must be knowing and voluntary. In rejecting a plea offer, however, a defendant chooses to exercise those rights, so due process does not require a court to screen the circumstances surrounding a defendant's decision to reject a plea offer and go to trial. *See United States v. Pleasant,* 730 F.2d 657, 664-65 (11th Cir.), *cert. denied*, 469 U.S. 869 (1984). Since the Due Process Clause is not implicated in unsuccessful plea negotiations, the Court will deny the first part of Wooten's first claim.

The second part of Wooten's first claim is that as a result of the prosecution's initially disclosing less persuasive DNA evidence, he based his defense on attacking that evidence, only to have the more damaging DNA evidence disclosed only after his trial had begun. This claim was adjudicated by the state courts, *see Wooten v. State*, No. 73,134 slip op. at 12-13, so the issue for this Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

The state court analyzed Wooten's claim under *Brady v. Maryland*, 373 U.S. 83 (1963). In

*Brady*, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. In the present case, the state court found that the prosecution did not "fail" to produce the DNA evidence to Wooten's counsel, because it maintained an open file policy, and second, once the defense became aware of the more damaging DNA evidence, the trial court granted them a two-day and then a ten-day continuance during the trial.

This Court finds that the state court's rejection of Wooten's claim is not contrary to the rule set forth in *Brady*, because the DNA evidence of which Wooten complains was not favorable to Wooten. Pursuant to 28 U.S.C. § 2254, however, the Court must also determine whether the state court's rejection of this claim was based upon an unreasonable application of the rule announced in *Brady*. Wooten contends that the rule in *Brady* must be considered in light of *Lankford v. Idaho*, 500 U.S. 110 (1991). In *Lankford*, the Supreme Court held that due process required that the defense be informed, prior to a sentencing hearing, that the trial judge was contemplating imposing the death penalty, at least in a case in which the defense was not aware of that possibility. 500 U.S. at 127. Based upon this precedent, Wooten argues that due process requires that he be made aware of the existence of the most damning DNA evidence sufficiently early to allow him to evaluate its strength and adjust his trial strategy.

Assuming *arguendo* that the rules in *Lankford* and *Brady* may be synthesized in this way, this claim fails because the trial court did not violate Wooten's rights under that combined rule. As soon as the trial court became aware that some of the DNA evidence had not been produced, it continued the trial to allow the defense to review the new DNA evidence and adjust its trial strategy as

7

necessary. Wooten does not argue that the twelve day continuance was insufficient for his counsel to review the evidence and adjust his trial strategy, so the Court will deny the second part of Wooten's first claim.

Wooten's second claim is that the state's failure to provide timely discovery of the scientific evidence against him in a timely manner rendered his counsel unable to provide effective assistance. This claim was adjudicated on the merits by the state court, *see Wooten v. State*, No. 73,134 slip op. at 11, so the question for this court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

The test for constitutionally ineffective assistance of counsel was set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. *Id.* at 687 and 694. Wooten's argument appears to be based upon the implicit presumption that, in light of the strength of the DNA evidence, the only reasonable choice would have been to accept the state's offer of a life sentence in exchange for a guilty plea. From this presumption, Wooten contends that his counsel's failure to advise him to accept the plea offer fell below an objective standard of reasonableness, and, had his lawyers advised him to accept the state's offer, there is a reasonable probability that the result in this case would have been different, because he would have accepted the offer and been sentenced to life in prison.

Wooten's argument fails because, under *Strickland*, the reasonableness of counsel's conduct

can only be evaluated in light of what counsel actually knew, or reasonably should have known, at the time the decision at issue was made. *Strickland*, 466 U.S. at 689. At the time the plea offer was pending Wooten's defense counsel were unaware of the strength the DNA evidence against him. Their failure to recommend that he accept the prosecution's offer would only be unreasonable if their lack of knowledge resulted from failing to conduct a dilligent investigation. Wooten never alleges that such is the case, so the Court finds that Wooten's counsel did not perform deficiently in failing to advise him to accept the prosecution's plea offer.

Because Wooten cannot establish that his counsel's conduct was objectively unreasonable, it is unnecessary to analyze whether he was prejudiced by that conduct (the other element of the *Strickland* test). Since Wooten cannot meet both elements of the *Strickland* test, the state court's rejection of his claim was not contrary to, or the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in that case. The Court will deny Wooten's second claim.

Wooten's third claim is that his counsel rendered ineffective assistance by not offering the testimony of Wooten's step-sister at the punishment determination phase of the trial. This claim was adjudicated on the merits by the state court, *see* State Habeas Transcript ( hereafter "SHTr") pp. 86-87, Findings of fact 6 and 7, and Conclusion of law 8, so the issue for this Court is whether the state court's rejection of this claim was contrary to, or the result of an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

At the punishment determination phase of the trial, the defense called as a witness Linda Behn Council ("Behn"), Wooten's step sister. Behn was prepared to testify that, while the impact of the killings was devastating on the surviving family members, she did not want Wooten to receive

9

the death penalty. The prosecution objected to this testimony, and the Court sustained the objection. After Behn had finished testifying and left the Courthouse, the prosecution informed the trial court that it was withdrawing its objection to Behn's victim impact testimony. The trial court asked the defense whether it wanted to recall Behn, and defense counsel stated that he could not immediately locate her. Defense counsel later stated in an affidavit that he decided not to request a continuance and attempt to bring Behn back to testify because he believed that requesting a continuance would generate hostility towards Wooten, and he did not think that the benefit of her testimony would outweigh the prejudicial value of recalling a witness who had already testified and who is merely going ask the jury not to assess the death penalty because the defendant is her brother.

As explained previously, to obtain relief on a claim of ineffective assistance of counsel, Wooten must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. In determining whether counsel acted unreasonably, the Court notes that counsel's "strategic choices, made after thorough investigation of law and facts relevant to plausible options, are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Because Wooten does not argue that a more thorough investigation would have led counsel to conclude that requesting a continuance would not generate hostility towards him, and because he does not argue that a more thorough investigation would have led counsel to conclude that the benefit of Behn's testimony would outweigh the prejudicial effect of recalling her, he cannot rebut the strong presumption that defense counsel's decision not to recall Behn was reasonable.

Because Wooten cannot establish the first element of the *Strickland* test, it is unnecessary for the Court to determine whether he can establish the second part of the test. Because Wooten cannot

establish both elements of the *Strickland* test, the state court's rejection of his third claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in that case. The Court will deny Wooten's third claim.

The Director contends that the Wooten's fourth through fourteenth claims are not cognizable in federal *habeas corpus* proceedings because they were procedurally defaulted at the state level. The general rule is that when a state court judgment is based upon a state law ground that is independent of federal law and is adequate to support the judgment, the federal courts may not grant relief from that judgment in *habeas corpus*. *See Coleman v. Thompson,* 501 U.S. 722, 730 (1991). In the present case, the state court found that Wooten's fourth, tenth, eleventh, twelfth, thirteenth and fourteenth claims were defaulted because they were not raised in Wooten's direct appeal. The United States Court of Appeals for the Fifth Circuit has held that this rule is both "independent" and "adequate," as those terms are used in *Coleman*. *See Brewer v. Quarterman,* 466 F.3d 344, 346-47 (5th Cir. 2006), *petition for cert. filed*, ( Apr. 30, 2007). The state court also found that Wooten's fifth, sixth, seventh, eighth and ninth claims were not cognizable because they were first raised in Wooten's second petition for post-conviction relief. The Fifth Circuit has held that this rule, commonly known as the "abuse of the writ" doctrine, is also independent and adequate for purposes of *Coleman*. *See Aguilar v. Dretke,* 428 F.3d 526, 533 (5th Cir. 2005), *cert. denied*, __ U.S. __, 126 S.Ct. 2059 (2006). Accordingly, under the general rule, the Court may not consider the merits of Wooten's fourth through fourteenth claims.

There are two exceptions to the general rule. A defendant can obtain review of procedurally defaulted claims by either establishing that he had good cause for defaulting his claims and he would

be prejudiced by the Court not addressing the merits of his claims, or by establishing that a fundamental miscarriage of justice would occur unless the Court addresses the merits of his claims, because he is actually innocent, either of the crime or of the punishment. The legal standard for actual innocence in this context is but for the constitutional error, no rational juror would have either found the defendant guilty or, even if the juror would have found him guilty, no rational juror would have sentenced him to death. *See Sawyer v. Whitley*, 505 U.S. 333, 347 (1992).

As the Director points out, Wooten did not attempt to establish the cause and prejudice exception to the procedural default doctrine. Wooten did, however, argue in his ninth claim that he was innocent of the death penalty, so were he to prevail on this claim the Court would be required to address the merits of his fourth through fourteenth claims. The Court will accordingly analyze Wooten's ninth claim first, in order to determine whether it will be necessary to address the merits of his other defaulted claims.

Under Texas law, the jury must find beyond a reasonable doubt that there is a probability that the defendant will commit acts of criminal violence which will pose a continuing threat to society. *See* TEX. CODE CRIM. PROC. ART. 37.071 § 2(b)(1) (2005). Wooten's ninth claim is that the main evidence that supported this finding - the expert opinion testimony of Dr. Kenneth Declava - was inadmissible. He contends that had the Court excluded Dr. Declava's testimony, no rational juror could have found beyond a reasonable doubt that he was likely to be dangerous in the future.

Wooten's claim fails because testimony such as that given by Dr. Declava was specifically allowed by the Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 897-99 (1983). Wooten contends that the continued vitality of *Barefoot* is questionable, citing, *inter alia*, Judge Garza's concurrence in *Flores v. Johnson*, 210 F.3d 456 (5th Cir.), *cert. denied*, 531 U.S. 987 (2000).

Because the Supreme Court has not explicitly overruled *Barefoot*, however, to hold that expert testimony on the issue of future dangerousness is inadmissible would require this Court to create a new rule of constitutional law, which it is prohibited from doing in the course of collaterally reviewing a criminal conviction. *See Tigner v. Cockrell*, 264 F.3d 521 (5th Cir. 2001), *cert. denied*, 534 U.S. 1164 (2002). The Court accordingly finds no error in the trial court admitting Dr. Declava's testimony. Because the trial court did not err in admitting Dr. Declava's testimony, the Court will deny Wooten's ninth claim. Because Wooten is not actually innocent of the death penalty, the Court finds that his fourth, fifth, sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth and fourteenth claims are procedurally barred, and it will dismiss those ten claims.

Wooten's fifteenth and final claim is that executing him would constitute cruel and unusual punishment because he is mentally retarded. The substantive legal principles that apply to this claim arise from *Atkins v. Virginia*, 536 U.S. 304 (2002). In *Atkins*, the Supreme Court held that because a national consensus had recently emerged opposing executing mentally retarded offenders, the practice constitutes cruel and unusual punishment. The Court noted, however, that not all offenders who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. It left to the states the task of developing appropriate ways to enforce its prohibition.

The Texas legislature has not yet enacted any guidelines for determining mental retardation in the capital punishment context, but in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), the Texas Court of Criminal Appeals set forth interim guidelines for courts considering state post-conviction claims of mental retardation. In *Briseno*, the court stated that it would apply either the definition of mental retardation promulgated by either the American Association of Mental

Retardation (AAMR)[1] or the definition found in Texas Health and Safety Code § 591.003(13). The AAMR definition utilizes a three part test:

>    1. Significantly subaverage general intellectual functioning (defined as an IQ score of about 70 or below)
>
>    2. accompanied by related limitations in adaptive functioning (defined as significant limitations in an individual's effectiveness in meeting the standards of maturation, learning, personal independence, and social responsibility that are expected for his or her age level and cultural group, as determined by clinical assessment and usually, standardized scales)
>
>    3. the onset of which occurs before age 18.

The Texas Health and Safety Code definition is similar:

> Mental retardation means significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period. Adaptive behavior means the effectiveness with or degree to which a person meets the standards of personal independence and social responsibility expected of the person's age and cultural group.

In the present case, the state court found, *inter alia*, that Wooten failed to prove by a preponderance of the evidence that he had significantly sub-average general intellectual functioning.[2] *See* SHTr p.326, Finding of fact 11-2. Because this is considered a finding of fact, not a mixed finding of fact and law, the question for the Court is whether this finding was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 1373 (2007).

---

[1] On Jan. 1, 2007, the AAMR changed its name to the American Association on Intellectual and Developmental Disabilities (AAIDD).

[2] The State of Texas has held that the applicant bears the burden of establishing by a preponderance of the evidence each of the three elements of mental retardation. *See Ex Parte Rodriguez*, 164 S.W. 3d 400 (Tex. Crim. App. 2005).

As stated previously, significantly sub-average general intellectual functioning is defined as an IQ score of about 70 or below. The evidence presented in the state court proceedings was that Wooten had over the years taken six I.Q. tests and obtained full scale IQ scores of 69, 88, 72, 87, 84 and 77. The state's expert witness, Dr. Price, tested Wooten, and the results of his testing indicated that Wooten's IQ is somewhere between 77 and 84. *See* SHTr pp. 4-5, Findings of fact 6-12.

Because all but one of Wooten's IQ test scores were greater than 70 and the mean of those scores is above 79, the Court finds that the state court's finding - that Wooten failed to establish by a preponderance of the evidence that he suffered from significantly sub-average general intellectual functioning - was not unreasonable, based upon the evidence presented in the state proceedings. Because Wooten cannot establish the first element of the the mental retardation test, it is unnecessary for the Court to determine whether he can establish the other two elements of the test. *Clark v. Quarterman*, 457 F.3d at 443-44. The Court will deny Wooten's fifteenth and final claim.

**Conclusion**

For the above reasons, the Court will deny Wooten's first, second, third, ninth and fifteenth claims on the merits, and it will dismiss Wooten's fourth, fifth, six, seventh, eighth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims with prejudice because those claims were procedurally defaulted in state court and are therefore barred from federal review. An Order and Judgment will be entered.

**So ORDERED and SIGNED this 18th day of October, 2007.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**